**KENTUCKY BAR ASSOCIATION,**
**Complainant,**

**v.**

**Ruth Ann SEBASTIAN, Respondent.**

**No. 2011–SC–000311–KB.**

Supreme Court of Kentucky.

Sept. 22, 2011.

## *OPINION AND ORDER*

The Respondent, Ruth Ann Sebastian, KBA Member Number 81972, whose Bar roster address is P.O. Box 8716, Lexington, Kentucky 40353, and who was admitted to the Kentucky Bar on April 24, 1987, is alleged to have committed multiple violations of the Rules of Professional Responsibility. A trial commissioner appointed by the Chief Justice has heard the matter, found by a preponderance of the evidence that Respondent committed the violations, and recommended that she be suspended from the practice of law for nine months, which the Court deems to be 270 days. This Court adopts the recommendation.

## I. Background

The matter stems from three separate case files, which have been consolidated.

## A. KBA File 11323

Respondent was hired by Dwayne Rider and his siblings in 2002 to probate the estate of their mother, Alice Hedger. She was also retained to investigate some real estate issues related to the estate and evaluate a prospective lawsuit against Mrs. Hedger's brother arising out of the estate. Respondent was paid $10,000 for the representation, by a check from Trina Jolly.[1]

Respondent filed an entry of appearance in the probate case, but did nothing further. Communication between her and her clients broke down. Though there is some evidence that an address change by Mr. Rider contributed to this, the trial commissioner found that Respondent made "no serious effort ... to maintain contact with the Riders." The trial commissioner noted that a woman named Carol Hughes, who identified herself as a paralegal working for the Kentucky Department for Workers' Claims, testified that she had done some real estate title research and had made copies of some deeds on Respondent's behalf. None of this material, however, was produced to the clients or the trial commissioner. The commissioner also noted that Respondent claimed to have performed some tasks related to the estate, including contacting realtors and appraisers, but she had no documentation of this work and could not even identify the persons she claimed to have spoken with. Respondent also claimed to have prepared a report of her research, which was sent to Mr. Rider. But he never received it. When she was told of this, she claimed to have sent the report a second time, this time the original, leaving her with no copy. Again, Mr. Rider never received this report.

Mr. Rider eventually hired another attorney, who requested the files, any re-

---

1. It is not clear from the record, but Ms. Jolly appears to be one of Mr. Rider's siblings.

ports, and a refund of the fee. Respondent claimed that she could not produce any of this because water had damaged her files, and the alleged report and computer on which it had been prepared.

Despite claiming to have done work on the case, Respondent could not produce *any* documentary evidence—no mailing receipts, no phone records, no water-damaged files. As the commissioner concluded, "[a]pparently, not even a trace of . . . Respondent's work remained."

These actions led the Inquiry Commission to issue a three-count charge against Respondent alleging violations of SCR 3.130–1.3,[2] which required diligent and timely work; SCR 3.130–1.5(a), which required a lawyer's fee to be reasonable; and SCR 3.130–1.16(d), which required the return of a client's papers and refund of any unearned fee upon the end of representation.

### B. KBA File 15045

Respondent represented Naomi Hughes before her death, having drafted a revocable living trust in 1999 and a will in 2001. In 2002, Naomi executed a new will drafted by one of her sons, Gregory Hughes naming another son, Ross Hughes, as executor of her estate. She also revoked the 1999 trust and transferred ownership of her home to her sons. She died in November 2002, less than a month later.

In February 2003, Respondent filed an entry of appearance in the probate of Naomi's estate, claiming to be her attorney and including a statement describing the circumstances around the preparation of the previous trust and will. She also filed an objection to the pleadings filed by the attorney for the estate, a proposed settle-

ment agreement, and several other documents. She also filed a circuit court action seeking to set aside several of the deeds transferring property from Naomi to her sons. Essentially, Respondent sought to inject herself into the probate of the estate and to challenge the proposed settlement of the estate, which she felt did not comply with her understanding of the decedent's wishes. To justify her actions, Respondent claimed to have known Naomi's wishes and that she "was trying to represent Naomi's interests rather than Naomi herself."

The trial commissioner found that at some point, Respondent was essentially trying to represent Carol Hughes, one of Naomi's daughters, who was actually represented by her lawyer. She is the same Carol Hughes referred to above who claimed to have done some work for Respondent.

Respondent did not reply when she was served with a copy of the bar complaint in this file.

The commissioner noted that while Respondent's actions demonstrated a clear ignorance of her ethical responsibilities, they did not involve a bad motive.

The Inquiry Commission issued a four-count charge alleging violations of SCR 3.130–1.1, which requires competent representation, for her filing a document claiming to represent a dead person (the statement describing the previous will and trust); SCR 3.130–1.9(a), which bars representing a client whose interests are materially adverse to a former client's, for representing Carol Hughes; SCR 3.130–3.7(a), which bars an attorney from being an advocate in a matter in which she is likely to be a witness, for having made

---

2. Respondent was charged before the substantial amending and renumbering of the Rules of Professional Responsibility in 2009, thus these numbers refer to the rules then in effect.

factual claims about Naomi's actions and wishes; and 3.130–8.1(b), which bars an attorney from knowingly failing to respond to a bar complaint.

### C. KBA File 16493

This file arises solely from Respondent's failure to respond to orders of the Court of Appeals. Respondent represented an appellant in a case before that court in 2007. Three months after Respondent filed the notice of appeal, the court issued an order requiring Respondent to file a status report and inquiring about the pre-hearing statement that had not been filed, despite being required by court rules. Respondent did not comply with the order.

Several months later, the appellee in the case moved to dismiss the appeal as untimely. Respondent did not reply to the motion, and the court granted it. In its dismissal order, the court ordered Respondent to show cause why she should not be fined for having failed to comply with court's previous order. Respondent did not respond to this order.

The court then issued a series of orders requiring Respondent to appear before it, none of which she heeded. Eventually, the court held Respondent in contempt, ordered her to pay a $500 fine, and referred the matter of her noncompliance to the bar association for possible disciplinary proceedings.

The Inquiry Commission issued a complaint alleging that Respondent violated SCR 3.130–3.4, which bars an attorney from disobeying an obligation to a court. Several attempts to serve the complaint on Respondent personally failed. Service was eventually accomplished by service on the Executive Director of the KBA under SCR 3.175.

The Inquiry Commission later issued a formal two-count charge alleging a violation of SCR 3.130–3.4 for failing to respond to the Court of Appeals' orders and SCR 3.130–8.1(b) for failing to respond to the related complaint.

Respondent has admitted both violations.

### D. Trial Commissioner's Findings and Recommendation

The three charges were consolidated and assigned to a trial commissioner. The commissioner held a hearing on the matter in September 2010. The Respondent testified at the hearing and filed a post-hearing brief. The KBA also filed a post hearing brief.

In his report, the trial commissioner made findings of fact and conclusions of law consistent with the facts described above. He also discussed the fact that Respondent was going through a "trying time in her life" when the unethical conduct occurred. The commissioner noted that Respondent's mother had died in 2002, and that her father had been seriously ill, requiring her constant care, in 2006 and 2007, which she claimed interfered with her law practice. However, he also noted that she offered no documentary proof, such as medical records, other than her own affidavit in which she claimed to be under medical treatment for uncontrolled diabetes and depression. The commissioner found that any emotional trauma caused by the loss of her parents did not excuse her ethical lapses.

 Ultimately, the commissioner found by a preponderance of the evidence that Respondent was guilty of most of the counts against her. Specifically, he found the following violations:

- **File 11323**
 - SCR 3.130–1.3, by failing to act with reasonable diligence and promptness in the probate matter and in

researching the deeds and possible lawsuit; and

- SCR 3.130–16(d) by receiving the $10,000 fee and then failing to do an amount of work reasonable for it; failing to provide proof of any work; failing to provide reasonable accounting to her clients and for failing to refund all or part of the fee.[3]
- **File 15045**
 - SCR 3.130–1.9(a), but only a technical violation, done without any malice and in response to what she perceived to be an imminent miscarriage of justice.
 - SCR 3.130–8.1(b) by failing to respond to the bar complaint.[4]
- **File 16493**
 - SCR 3.130–3.4(c) by failing to respond to multiple orders of the Court of Appeals.[5]

The Commissioner also found that Respondent was in need of substantial remedial ethics training.

The trial commissioner reviewed Respondent's prior disciplinary history, which consists of a single but serious instance as described in *Kentucky Bar Association v. Sebastian*, 268 S.W.3d 928 (Ky.2008). In 2006, Respondent was "indefinitely suspended from the practice of law in the United States District Court for the Eastern District of Kentucky 'until such time that [she] shows cause sufficient to the Court that she ought to be reinstated to

practice.'" *Id.* at 928. The behavior underlying that suspension was very similar to that in at least one of the consolidated files in this case: Respondent had failed to respond to a motion to dismiss in a federal civil action.

In 2008, this Court issued an order requiring Respondent to show cause why she should not be subject to identical reciprocal discipline under SCR 3.535. She did not respond to that order. As a result, she was "suspended from the practice of law in the Commonwealth of Kentucky until she demonstrates that her current suspension from the United States District Court for the Eastern District of Kentucky has been lifted." *Id.* This indefinite suspension is still in effect.

In light of this prior discipline and the severity of at least some of Respondent's ethical violations, the trial commissioner recommended that she be suspended from the practice of law for nine months, which this Court reads to mean 270 days. He also recommended as a condition of any future reinstatement that Respondent repay the $10,000 fee to the Rider Family, with 4% interest, beginning January 5, 2002, compounded annually, and that she audit a full semester course in professional responsibility, such as the University of Kentucky College of Law's LAW 835 or the equivalent, at an ABA approved law school.

---

3. The report does not include a conclusion either way as to the alleged violation of SCR 3.130–1.5(a) (reasonable fee). Presumably, the commissioner believed that Respondent's conduct did not violate this rule because it instead violated SCR 3.130–1.16(d), under which he specifically found that she "fail[ed] to do an amount of work reasonable for such fee," among other things.

4. Likewise, the report does not include a finding either way as to the other two counts in

the charge in this case, alleging violations of SCR 3.130–1.1 and SCR 3.130–3.7(a). Presumably, the commissioner found that Respondent's behavior did not violate these rules or that her misconduct was covered adequately by his finding that she violated SCR 3.130–1.9(a).

5. Again, there was no finding as to the second count of this charge, which alleged a violation of SCR 3.130–8.1(b).

## II. Adoption of Recommendation and Order

■ No appeal of the trial commissioner's recommendation, as allowed under SCR 3.360, .365, and .370, was sought, either by Respondent or Bar Counsel. As a result, this matter was submitted directly to this Court without going before the Board of Governors. *See* SCR 3.360(4). Because the trial commissioner's findings and conclusions are supported by the record and the law, and because the recommended sanction is appropriate in light of Respondent's history of prior discipline, this Court elects not to review the recommendation of the trial commissioner as allowed under SCR 3.370(9). The recommendation of the trial commissioner is therefore adopted pursuant to SCR 3.370(10), except as noted in the following order.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

(1) Respondent, Ruth Ann Sebastian, is found guilty of having committed multiple violations of the Rules of Professional Responsibility as described above.

(2) Respondent is suspended from the practice of law in the Commonwealth of Kentucky for 270 days from the date of this Order.

(3) To the extent necessary, since she is already suspended from the practice of law, Respondent shall, within 10 days from the entry of this Opinion and Order, notify all clients, in writing, of her inability to represent them; notify, in writing, all courts in which she has matters pending of her suspension from the practice of law; and furnish copies of all letters of notice to the Executive Director of the Kentucky Bar Association. Furthermore, to the extent possible, she shall immediately cancel and. cease any advertising activities in which she is engaged.

(4) In accordance with SCR 3.450, Respondent is directed to pay all costs associated with these disciplinary proceedings against her, said sum being $2348.99, for which execution may issue from this Court upon finality of this Opinion and Order.

(5) Respondent shall refund the $10,000 fee to the Rider family, with 4% interest compounded annually, calculated from January 5, 2002. Compliance with this requirement shall be a precondition on Respondent's reinstatement or restoration to the practice of law in this Commonwealth.

(6) As a further condition to Respondent's reinstatement or restoration to the practice of law in this Commonwealth, Respondent shall complete the Office of Bar Counsel's Ethics and Professionalism Enhancement Program in lieu of the recommended auditing of a professional responsibility course at an ABA accredited law school.

All sitting. All concur.

ENTERED: September 22, 2011.

/s/ John D. Minton Jr.
CHIEF JUSTICE